**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Julio Iglesias, | ) | No. CV 11-01891-PHX-FJM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| The City of Goodyear, | ) | |
| Defendant. | ) | |

The court has before it defendant's motion for summary judgment (doc. 95), defendant's statement of facts in support ("DSOF") (doc. 96), plaintiff's response (doc. 104), plaintiff's controverting statement of facts ("PSOF") (doc. 105), and defendant's reply (doc. 109).

**I**. **Background**

On a motion for summary judgment we accept undisputed facts as true and review disputed facts in the light most favorable to the non-moving party. Anthoine v. N. Cent. Cntys. Consortium, 605 F.3d 740, 745 (9th Cir. 2010).

The City of Goodyear ("Goodyear") hired plaintiff as a police officer in August 2003, and promoted him to judicial enforcement officer in September 2006. Amended Complaint ("AC") at ¶¶ 6-7. In the judicial enforcement officer role, plaintiff worked for the City Municipal Court, and reported directly to the Court Administrator, who ultimately reported to Municipal Judge Michael Simonson ("Judge Simonson"). DSOF ¶ 1; AC at ¶ 7.

On December 14, 2009, plaintiff raised various issues related to his employment in an eight page memorandum ("2009 Memo") to the Court Administrator. DSOF ¶ 35; AC ¶ 10. On December 15, 2009, plaintiff received a disciplinary letter from the Court Administrator regarding an incident that took place in June 2009, in which he apprehended a reckless driver while off duty. See Doc. 96-5 at 61; AC ¶¶ 11-12. The Court Administrator's letter also directed plaintiff not to engage in any off-duty law enforcement action. Id.

In February 2010, plaintiff was subject to investigations by the Goodyear Police Department's Internal Affairs division ("Internal Affairs") and placed on "administrative leave" pending the outcome of the investigations. AC ¶ 17; DSOF ¶ 9. On March 29, 2010, the Court Administrator served plaintiff with a pre-termination letter stating that he was recommending termination of plaintiff's employment to Judge Simonson. Doc. 96-5 at 60-64. The pre-termination letter outlined various incidents in which plaintiff disregarded the Court Administrator's directive not to engage in law enforcement activities while off-duty. Id.; AC ¶ 18. Plaintiff had a pre-termination hearing before Judge Simonson on April 1, 2010. Doc. 96-5 at 65. Judge Simonson terminated plaintiff"s employment effective April 9, 2010. Id.; AC ¶ 18. Plaintiff appealed and requested a post-termination hearing. Doc. 96-5 at 66.

In May 2010, Goodyear rescinded plaintiff's termination and re-employed him under a last chance agreement ("May Agreement"). DSOF ¶ 14; AC ¶ 19. Under the May Agreement, plaintiff no longer had any law enforcement duties and he was no longer appointed as a peace officer. DSOF ¶ 15; AC ¶ 20. Plaintiff agreed to conduct himself "in a professional and courteous manner at all times," to "communicate in a positive manner with co-workers, customers, and the general public," and to interact "cooperatively and tactfully with other City employees and the general public." DSOF ¶ 15; PSOF ¶ 22. Finally, the May Agreement states: "I understand and agree that if I fail to comply with any of the terms and conditions of this agreement, I will be subject to immediate termination, which will not be subject to amendment or modification. No excuses will be accepted for not meeting the

terms of this agreement." DSOF ¶ 16; PSOF ¶ 22.

In December 2010, while at his daughter's school, plaintiff confronted a teacher and her aide because he felt that the aide had inappropriately raised his voice to the children in his classroom. DSOF ¶ 19; AC ¶¶ 23-26. During the incident plaintiff was wearing a jacket that identified him as a Goodyear officer. DSOF ¶ 224. Plaintiff yelled at the teacher and her aide, and "got a little heated." Doc. 96-7 at 23-26. Plaintiff did not report the incident to the police or to the school principal. Doc. 96-7 at 37.

On December 20, 2010, the Court Administrator informed plaintiff that the incident at his daughter's school constituted a violation of the May Agreement and that Internal Affairs was going to investigate the matter. AC ¶ 27. On December 21, 2010, in a pre-termination letter, the Court Administrator recommended termination of plaintiff's employment based on breach of the May Agreement. Doc. 96, ex. B. The Court Administrator also scheduled a pre-termination hearing with Judge Simpson. Id. On December 23, 2010, plaintiff attended a pre-termination hearing in which he had the opportunity to discuss any issues which he deemed important to his termination. Doc. 96, ex. G. During the pre-termination hearing plaintiff did not indicate that he felt the termination recommendation was retaliatory or due to any improper motive. Id. He repeatedly apologized for his behavior at his daughter's school, and indicated that he was embarrassed by it. Id. Judge Simonson terminated plaintiff"s employment effective December 28, 2010. Doc. 96-1 at 11.

Plaintiff filed this action on September 26, 2011, asserting claims of wrongful discharge, breach of the covenant of good faith and fair dealing, violation of his due process rights, violation of his right to free speech under the United States and Arizona constitutions, and intentional infliction of emotional distress. Defendants move for summary judgment on all counts.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## II. Counts IV & V – Free Speech Claims

Plaintiff alleges that Goodyear's termination of his employment violated his right to free speech under the First Amendment and the Arizona Constitution. In Arizona, the analysis regarding whether speech is protected under the state constitution is consistent with First Amendment case law. Coleman v. City of Mesa, 284 P.3d 863, 868-869 (Ariz. 2012). "[T]o state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quotation omitted).

Whether speech is protected is a question of law. Connick v. Myers, 461 U.S. 138, 148 n. 7, 103 S. Ct. 1684, 1690 n. 7, 75 L. Ed. 2d 708 (1983). Only speech which may "be fairly characterized as constituting speech on a matter of public concern" is protected. Connick, 461 U.S. at 146, 103 S. Ct. at 1690. Matters of public concern are those that can "be fairly considered as relating to any matter of political, social, or other concern to the community." Id. When making this determination, we look to the "content, form, and context" of the speech. Id. at 147-48, 103 S. Ct. at 1690. In connection with the form and context, "we look to such factors as the public or private nature of the speech, and the speaker's motive." Weeks v. Bayer, 246 F.3d 1231, 1235 (9th Cir. 2001) (citations omitted). One critical inquiry is whether the employee spoke in order to bring wrongdoing to light or merely to further some purely private interest. Havekost v. U.S. Dept. of Navy, 925 F.2d 316, 318 (9th Cir. 1991). If the speech does not involve a matter of public concern, the

- 4 -

employee's First Amendment claim fails; if it does, "the question becomes whether the employee's interest in speaking on matters of public concern is outweighed by the employer's interest in promoting the efficiency of the public service it performs." Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958, 164 L.Ed.2d 689 (2006) (citation omitted).

Plaintiff argues that the speech at issue is categorically a public issue because it concerned the abuse of young children by a teacher's aide. Plaintiff's Response at 10. He claims that the speech is protected because it occurred when he was off-duty and at a location unrelated to his employment with Goodyear. Defendant contends that plaintiff's speech is not protected because it was an altercation with no attempt to foster public discourse or bring matters of public concern to light. Defendant also argues that Goodyear was legitimately concerned about the public's view of its police operations given plaintiff's abusive manner.

The safety of young children is certainly of concern to the community. The public has an interest in knowing whether children are safe while at school. Plaintiff, however, did nothing more than, on a single occasion, confront a teacher and her aide at his daughter's school in a private classroom. It is undisputed that plaintiff made no attempt to inform the general public, a factor considered relevant in other public concern cases. See e.g. Havekost, 925 F.2d at 319; Weeks, 246 F.3d at1235. It is also undisputed that plaintiff did not speak to any authority in or outside the school to draw attention to the alleged misconduct of the teacher's aide, in a manner that might suggest public-mindedness. Indeed, plaintiff testified during his pre-termination hearing that he decided not to speak to the school principal because he did not want the teacher's aide to lose his job. Doc. 96-7 at 37.

Moreover, whether a matter is of concern to the community is an important element of the protected speech analysis, but it does not alone establish constitutional protection. Gilbrook v. City of Westminster, 177 F.3d 839, 867 (9th Cir. 1999). We must also balance whether the employee's interest in speaking on matters of public concern is outweighed by the employer's interest in promoting the efficiency of the public service it performs. Garcetti, 547 U.S. at 418, 126 S. Ct. at 1958. "In conducting this balancing, courts must give

government employers' wide discretion and control over the management of [their] personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch.'" Gilbrook, 177 F.3d at 867 (quoting Connick, 461 U.S. at 151, 103 S. Ct. at 1692). The time, place, and manner of the employee's speech is relevant to whether the employer's operational efficiency was disrupted. Voigt v. Savell, 70 F.3d 1552, 1561 (9th Cir.1995).

Here, it is undisputed that plaintiff was wearing a jacket identifying him as a Goodyear officer. Plaintiff admits that he yelled, "[got] out of hand," and was unprofessional when confronting the teacher and her aide. Doc. 96-7 at 23-26, 37. The manner in which plaintiff spoke disrupted Goodyear's interest in promoting the professionalism of its officers. Moreover, plaintiff's conduct clearly violated the May Agreement in which he agreed to conduct himself "in a professional and courteous manner at all times," and to "communicate in a positive manner with co-workers, customers, and the general public." Doc. 96-3 at 11-12. We conclude that the balancing test strongly favors Goodyear and that plaintiff has failed to establish that he engaged in constitutionally protected speech. Because plaintiff cannot show that he engaged in protected speech, his free speech claims under the First Amendment and the Arizona Constitution fail as a matter of law. We grant defendant's motion for summary judgment on counts four and five.

### III. Count I – Arizona Employment Protection Act

Under the Arizona Employment Protection Act ("AEPA"), an employee may bring a claim for wrongful termination if the employer terminated the employment relationship in violation of a contract, statute, or public policy. Plaintiff alleges that Goodyear wrongfully terminated him in violation of his right to free speech under the federal and Arizona Constitution following (1) his speech at his daughter's school in 2010 and (2) his submission of the 2009 Memo. Plaintiff's Response at 12-13. Plaintiff argues that Goodyear is liable for wrongful discharge in violation of A.R.S. §§ 23-1501(3)(b) and (c)(i) and (ii). As an initial

1  matter, to the extent plaintiff is attempting to assert a state law wrongful termination claim
2  in connection with his April 2010 termination, the claim is barred by the one-year statute of
3  limitations in A.R.S. § 12–541 (3), (4). Therefore, we only consider whether his December
4  2010 termination was wrongful under the AEPA.

### A.  A.R.S. §§ 23-1501(3)(c)(i) and (ii)

Under A.R.S. § 23-1501(3)(c)(i), an employee has a claim against an employer if the employer has terminated the employment relationship in retaliation for the employee's refusal "to commit an act or omission that would violate the Constitution of Arizona or the statutes of this state." Because plaintiff has not alleged any facts to support this claim, it fails under Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

An employee has a claim against an employer under A.R.S. § 23-1501(3)(c)(ii) if the employer has terminated the employment relationship in retaliation for:

> The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

A.R.S. § 23-1501(c)(ii). By the plain terms of § 23-1501(3)(c)(ii), an employee must establish that he was terminated in retaliation for disclosing that he had information or a reasonable belief that his "employer or an employee of the employer" violated or would violate an Arizona statute or constitutional provision. Id.

Defendant argues that plaintiff fails to state a prima facie case under § 23-1501(3)(c)(ii). As an initial matter, there is no evidence that plaintiff disclosed any information regarding potential Arizona statutory or constitutional violations. Furthermore, it is undisputed that plaintiff was a Goodyear employee when the incident at his daughter's

- 7 -

1 school took place. It is also undisputed that his speech was both concerned with, and
2 directed to teachers, who were not Goodyear employees. Therefore, any information or
3 reasonable belief that plaintiff expressed at his daughter's school was not concerning
4 potential violations of Arizona law by his "employer or an employee of the employer," as
5 required by the statute. A.R.S. § 23-1501(c)(ii). Accordingly, plaintiff's speech at his
6 daughter's school in 2010 cannot support a claim under § 23-1501(3)(c)(ii).

7 Defendant also argues that plaintiff's claim based on the 2009 Memo fails because
8 plaintiff neither alleges, nor presents evidence that the 2009 Memo communicated
9 information or a reasonable belief that Goodyear or a city employee violated or would violate
10 an Arizona statute or constitutional provision. Plaintiff does not present evidence to the
11 contrary in his response. Instead, plaintiff argues that under the AEPA it is sufficient to
12 allege that Goodyear terminated his employment following his submission of a memorandum
13 "which outlined wrongdoing within Goodyear." Plaintiff's Response at 13. Rule 56(c), Fed.
14 R. Civ. P., requires entry of summary judgment against a party who fails to establish the
15 existence of an essential element of its case. Therefore, absent evidence that plaintiff
16 disclosed that he had information or a belief that Goodyear or its employees violated an
17 Arizona law, we conclude that plaintiff has not established a claim under A.R.S. § 23-
18 1501(3)(c)(ii).

### B. A.R.S. §§ 23-1501(3)(b)

20 Under A.R.S. § 23-1501(3)(b), a wrongful discharge claim exists when an "employer
21 has terminated the employment relationship of an employee in violation of a *statute of this*
22 *state*." Id. (emphasis added). It is well established that a claim based on § 23-1501(3)(b)
23 requires an alleged violation of an Arizona statute. Galati v. America West Airlines, Inc. 205
24 Ariz. 290, 293, 69 P.3d 1011, 1014 (Ariz. App. 2003). Because plaintiff has not alleged
25 violation of any Arizona statute, the AEPA claim under § 23-1501(3)(b) also fails.

26 Because plaintiff has failed to present any evidence to support his AEPA claim, we
27 grant summary judgment on count one.

### IV. Count III – Due Process

Plaintiff claims that Goodyear violated his due process rights under 42 U.S.C. § 1983 when it denied him a post-termination administrative procedure after his December 2010 termination. Plaintiff's Response at 13. The Due Process Clause demands "that a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner." Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist., 149 F.3d 971, 984 (9th Cir. 1998) (internal quotation marks and citation omitted). Before an employee with a constitutionally protected interest in his employment is laid off or fired, he must be provided with the opportunity for "some form of pre-termination hearing." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). An employee must be provided "oral or written notice of the charges against [him], an explanation of the employer's evidence, and an opportunity to present [his] side of the story." Id. at 546, 105 S. Ct. at 1495. The hearing need only happen before the employee is finally deprived of his property interest. Brewster, 149 F.3d at 985.

It is undisputed that plaintiff received a pre-termination letter which included notice and an explanation of the charges against him, and that he was afforded an opportunity to present his side of the story at a pre-termination hearing before Judge Simonson. See Doc. 96-5 at 68-70; Doc. 96-7 at 5-45. Plaintiff argues that the Court Administrator initially told him he did not have any right to appeal his December 2010 termination, and that he did not offer him a post-termination hearing. Plaintiff's Response at 13. However, the pre-termination letter plaintiff received clearly states, "attached is a copy of the City's grievance procedure for appeals of adverse employment decisions, which is available to you . . ." Doc. 96-5 at 70. Moreover, plaintiff has not argued that he requested any other form of review of his termination of employment from Goodyear that was denied. Because plaintiff has offered no evidence that the pre- and post-termination procedures offered to him were inadequate, his due process claim fails as a matter of law.

**V. Count II – Covenant of Good Faith and Fair Dealing**

1    Plaintiff argues that Goodyear breached the covenant of good faith and fair dealing
2 implied in the May Agreement by not allowing him to have a hearing and telling him that he
3 had no rights to an appeal hearing. Plaintiff's Response at 15. Arizona law implies a
4 covenant of good faith and fair dealing in every contract which prohibits a party from doing
5 anything to prevent other parties to the contract from receiving the benefits and entitlements
6 of the agreement. Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons
7 Local No. 395 Pension Trust Fund, 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002). Plaintiff has
8 not presented evidence to show that Goodyear did anything to prevent him from receiving
9 the benefits and entitlements of the May Agreement. As discussed above, Goodyear held a
10 pre-termination hearing for plaintiff and apprised him of the City's grievance procedure for
11 appeals. Accordingly, we grant summary judgment on count two.

### VI. Count VI – Intentional Infliction of Emotional Distress

A plaintiff may recover on a claim for intentional infliction of emotional distress "only where the defendant's acts are so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Patton v. First Fed. Sav. & Loan Ass'n of Phoenix, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) (quotation omitted). Goodyear argues that plaintiff has not presented evidence of any conduct approaching this threshold. Plaintiff does not contend otherwise. Instead, plaintiff argues that there is a question of fact as to whether he suffered emotional distress. But without evidence of outrageous and extreme conduct by Goodyear or its employees, the claim for intentional infliction of emotional distress fails. Therefore, we grant defendant's motion for summary judgment on count six.

...

...

## VII. Conclusion

**IT IS ORDERED GRANTING** defendant's motion for summary judgment (doc. 95). The clerk shall enter final judgment in favor of defendant and against plaintiff.

DATED this 19th day of February, 2013.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge